UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>v.<br><br>KARINA MARQUEZ,<br><br>Defendant. | Case No.:  3:19-cr-4626-BTM-1<br><br>**ORDER DENYING THE DEFENDANT'S MOTIONS TO SUPPRESS**<br><br>**[ECF NOS. 52, 55]** |
|---|---|

Pending before the Court are Defendant Karina Marquez's motions to suppress the search of her cell phone. (ECF No. 52-1 ("Mot."); ECF No. 55-1 ("Suppl. Mot.").)[1]   For the reasons discussed below, the Court denies Ms. Marquez's motions.

**BACKGROUND**

1. Facts

On October 21, 2019, Ms. Marquez attempted to enter the United States through the San Ysidro, California port of entry with her minor children.  She was driving a 2007 Jeep Grand Cherokee bearing California license plates and was

---

[1] Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

the registered owner of the vehicle. At the port, Ms. Marquez stated twice that she had nothing to declare. A vehicle inspection, however, revealed packages in the Jeep's quarter panels.

The Jeep was referred to the secondary inspection area where Customs and Border Protection officers removed 80 packages weighing approximately 42.44 kilograms (93.37 lbs.) from the doors, rear quarter panels, center console air vent, and dashboard of Ms. Marquez's vehicle. One of the packages field-tested positive for methamphetamine and Ms. Marquez was placed under arrest.

Following her arrest, Homeland Security Investigations Special Agents Chris Mercado and Jeff Porter interviewed Ms. Marquez on camera. They read Ms. Marquez her Miranda rights and she agreed to speak with the agents. (ECF No. 50-1 ("Marquez Tr."), 18:1–23:12.) Ms. Marquez also signed a form indicating that her rights were read to her, that she understood her rights, and that she was willing to answer questions without an attorney present. (*Id.* at 23:13–25:1.)

The agents then asked Ms. Marquez for permission to search her cell phone. (*Id.* at 25:5–18.) At one point, Agent Porter remarked "[Y]ou don't have to give us the consent, because we're going to do it anyway. But it's easier if we do it here right now. Okay? So, this form gives us that permission." (*Id.* at 25:21–26:2.) The following exchange between Ms. Marquez and Agent Porter took place a few minutes later:

> **Ms. Marquez**: . . . I mean, but you're saying that, uh, anyway, I mean, you're going to do it anyway with . . . .
>
> **Agent Porter**: [W]e'll get an order, but if you give us the consent, then we can do it today.
>
> **Ms. Marquez**: Uh-huh.

(*Id.* at 29:1–10.) Ms. Marquez then signed a form consenting to a search of her cell phone. (ECF No. 53-1; ECF No. 53-2 (Cell Phone Custody Log).)

On December 18, 2019, Assistant United States Attorney Shauna R. Prewitt filed her appearance in this case. (ECF No. 19.) The next day, she instructed agents to obtain a warrant to search Ms. Marquez's cell phone. (ECF No. 53-2). On December 20, 2019, the agents obtained a search warrant allowing the Government 90 days to extract data from Ms. Marquez's cell phone. (ECF No. 52-3.)

On January 21, 2020, Homeland Security Investigations Special Agent Brian Trammell, a computer forensics agent, forensically extracted the data from Ms. Marquez's cell phone. (ECF No. 53-4.) The extracted cell phone data was saved on a DVD and produced to Ms. Marquez on March 2, 2020.

2. Procedural History

Ms. Marquez is charged in a one-count Information with importation of methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. (ECF No. 12.) She has pled not guilty. (ECF No. 14.)

On September 23, 2020, Ms. Marquez moved to suppress any evidence obtained from her cell phone search because she did not voluntarily consent to the search of her cell phone and the Government first had to obtain a warrant before searching her cell phone. (Mot., 3:12–6:16) Ms. Marquez also argued that the Government falsely stated that it had not already searched Ms. Marquez's cell phone in its search warrant application. (*Id.* at 6:17–8:2.) Ms. Marquez argued that, because the Government failed to disclose it searched the cell phone on the day of her arrest, an evidentiary hearing was needed to test the veracity of the Government's supporting affidavit under *Franks v. Delaware*, 438 U.S. 154, (1978). (*Id.* at 6:23–8:2).

In opposition, the Government asserted that there is no evidence Ms. Marquez's cell phone was searched before it obtained the search warrant. (ECF No. 53.) At most, the Government argued, Agent Porter said the Government "*can* do [the download] today," not that it would search the phone that day. (*Id.* at

1 | 5:27–28.)

2 | Ms. Marquez then filed a supplemental motion to suppress again arguing that her consent to the cell phone search was not valid and that the Government's two-month delay between seizing her cell phone and obtaining the search warrant lacked justification and violated her Fourth Amendment rights.  (Suppl. Mot.)

In opposition to the supplemental motion, the Government argued that Ms. Marquez's consent was valid under the totality of the circumstances and that the delay between seizing the cell phone and seeking a warrant was justified because Ms. Marquez's possessory interest in the cell phone was minimal and the Government's interest in preserving drug smuggling evidence was strong. (ECF No. 60.)

The Court held a hearing on October 28, 2020, where the parties contested whether Ms. Marquez's cell phone was searched on the day of her arrest.  (ECF No. 65.)  The Court continued the hearing to November 16, 2020, to hear Agents Porter's and Mercado's testimony and determine whether they or anyone else searched Ms. Marquez's cell phone before applying for the warrant.

On November 16, 2020, the agents testified that Ms. Marquez consented to her phone being searched, both verbally and in writing.  They further testified that neither they or any other agent searched Ms. Marquez's phone, forensically or manually, on the day of the interview and until Agent Trammell conducted his forensic examination.  Agent Porter testified that he reviewed the cell phone contents after Agent Trammell extracted the data and put it on a DVD.  (*See* ECF No. 53-5.)  The parties also stipulated to the accuracy of Ms. Marquez's arrest interview transcript.

## DISCUSSION

Ms. Marquez argues that any evidence found in her cell phone must be

suppressed because her consent to have her cell phone searched was not voluntary.  Based on the totality of the circumstances and after considering the applicable factors, the Court concludes that Ms. Marquez voluntarily consented to the search.

Ms. Marquez also argues that the Government's delay in obtaining a search warrant was unreasonable.  The Court concludes that the delay was not unreasonable in light of Ms. Marquez's failure to allege, much less prove, that the delay adversely affected her possessory interest and the Government's strong interest in preserving evidence.

1. <u>Consent to the Cell Phone Search</u>

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)).  One of those "well-delineated exceptions" is "a search that is conducted pursuant to consent."  *Id.; see also United States v. Brown,* 563 F.3d 410, 415 (9th Cir. 2009) ("[A warrantless] search conducted pursuant to a valid consent is constitutionally permissible." (quoting *Bustamonte,* 412 U.S. at 222)).

A consent to search is valid if the consent was freely and voluntarily given and not the result of duress or coercion, express or implied.  *Bustamonte,* 412 U.S. at 227; *see United States v. Cormier,* 220 F.3d 1103, 1112 (9th Cir. 2000) (stating that the consent must be "voluntary and intelligent").  "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Bustamonte,* 412 U.S. at 227; *Cormier,* 220 F.3d at 1112.

Several non-exclusive factors may assist the court in determining whether a person has voluntarily consented to the search, including:

>(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained.

*United States v. Patayan Soriano,* 361 F.3d 494, 502 (9th Cir. 2004) (quoting *United States v. Jones,* 286 F.3d 1146, 1152 (9th Cir. 2002)).  "No one factor is determinative in the equation [and] these factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry."  *Id.* at 502 (citing *Bustamonte,* 412 U.S. at 224 (rejecting "talismanic definition of 'voluntariness' mechanically applicable" to all situations)).  Indeed, although these factors "aid in the decision making process, the full richness of any encounter must be considered . . . . Every encounter has its own facts and its own dynamics. So does every consent."  *United States v. Morning,* 64 F.3d 531, 533 (9th Cir. 1995), *overruled on other grounds by Georgia v. Randolph,* 547 U.S. 103 (2006).

It is the government's burden to prove that the consent was freely and voluntarily given. *Soriano,* 361 F.3d at 501.

The first four factors are straightforward.  First, Ms. Marquez was clearly in custody when she signed the consent form.  Second, there were no guns drawn while Ms. Marquez was giving her consent.  Third, Ms. Marquez was read her *Miranda* rights and given a written copy of those rights, which she signed indicating she understood her rights and was knowingly and intelligently waiving them.  (Marquez Tr., 18:1–25:1.)  Fourth, Ms. Marquez was notified she had a right not to consent to the search of her cell phone as well as the right to revoke her consent.  (*Id.* at 25:5–26:2; 28:1–16.)

The parties dispute the fifth factor.  Ms. Marquez's motion centers around Agent Porter's statement that she did not "have to give [the Government] consent because we're [the Government] going to get an order and do it anyway."  (*Id.* at 25:21–25.)  The application of the fifth factor concerns whether a suspect is told

about the possibility of a search warrant in a threatening manner so that withholding consent would be futile. *Soriano*, 361 F.3d at 504; *see United States v. Kim*, 25 F.3d 1426, 1432 (9th Cir. 1994) (threatening a defendant with a search warrant intimates that "withholding of consent would ultimately be futile").

Here, Agent Porter told Ms. Marquez that if she did not give consent to the search, their next step would be to obtain an order to search her phone.

Agent Porter did not raise the fact that he could obtain a search warrant to coerce Ms. Marquez into consenting. To the contrary, Agent Porter explained this fact in the course of a rights colloquy, and later on, in response to Ms. Marquez's specific question of whether the Government was going to search her phone anyway. (Marquez Tr., 29:1–8.); *see United States v. McCarty*, 835 F. Supp. 2d 938, 954 (D. Haw. 2011) (the agent "did not raise the fact that he could obtain a search warrant to coerce Defendant into consenting; rather, Detective Ancheta explained this fact only in response to Defendant's specific question of whether HCPD 'need[ed] to search them anyway.'"). Nor are any other hallmarks of coercion or duress apparent. The conversation was consensual and Agent Porter did not speak in "an authoritative tone or led [Ms. Marquez] to believe that [s]he had no choice other than to answer [] questions." *Cormier*, 220 F.3d at 1110. He did not threaten to take away Ms. Marquez's children, *United States v. Tingle,* 658 F.2d 1332, 1336 (9th Cir.1981), nor was there any suggestion that Ms. Marquez was in a "possibly vulnerable subjective state." *Soriano*, 361 F.3d at 502. In short, none of the traditional indicia of coercion or duress were present before Ms. Marquez consented to the search of her cell phone.

Even if Agent Porter's statement implied that withholding consent was futile, the weight of the fifth factor is significantly diminished when probable cause exists. *Id.* at 504–05 (citations omitted). Here, there was sufficient grounds to establish probable cause to search Ms. Marquez's cell phone. The vehicle Ms. Marquez was driving had just been found with more than 93 pounds of

methamphetamine hidden in the vehicle doors, rear quarter panels, center console air vent, and dashboard. These facts establish probable cause to believe that evidence relating to importation of methamphetamine would be found in her phone. *See United States v. Rodriguez*, 464 F.3d 1072, 1078 (9th Cir. 2006) (consent to search voluntary though officer told tenant he would secure warrant if she refused because probable cause existed to justify warrant and tenant signed consent form), *rev'd on other grounds*, 553 U.S. 377 (2008).

In sum, the totality of circumstances leads the Court to conclude Ms. Marquez freely and voluntarily consented to the search of her cell phone.

2. <u>Delay in Obtaining a Search Warrant</u>

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights. The touchstone is reasonableness. *See United States v. Van Leeuwen,* 397 U.S. 249, 252–53 (1970). We "determine whether the delay was 'reasonable' under the totality of the circumstances, not whether the Government pursued the least intrusive course of action." *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002). Such determinations are made on a case-by-case basis. *See Van Leeuwen,* 397 U.S. at 253.

The Supreme Court has adopted a balancing test to determine whether a seizure is reasonable. The Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

In balancing these interests, courts have identified several highly relevant factors to this inquiry. First, the extent of the intrusion on the person's possessory interests. *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir.

2015).  Second, the length of the delay in the absence of probable cause.  *Place*, 462 U.S. at 709.  Third, whether the individual consented to a seizure and search.  *Sullivan*, 797 F.3d at 633.  And fourth, the Government's legitimate interest in holding the property as evidence.[2]  *Place*, 462 U.S. at 703–04.

    The Court begins by considering the extent of the intrusion on Ms. Marquez's possessory interests given the totality of the circumstances.  The Court concludes they were minimal.  Ms. Marquez has not proved that the delay in the search of her phone adversely affected her interests protected by the Fourth Amendment.  *United States v. Johns,* 469 U.S. 478, 487 (1985).  Ms. Marquez never asked the Government to return her cell phone.  *Id.* at 487 (defendants who "never sought return of the property" cannot argue that delay adversely affected Fourth Amendment rights); *see Sullivan*, 797 F.3d at 633–34; *United States v. Stabile*, 633 F.3d 236 (3rd Cir. 2011) (defendant's possessory interest in their computer not implicated because they did not seek to recover it until 18 months after it was seized); *United States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009) (delayed search not unreasonable because "[defendant] not identified any prejudice from the delay and the only readily apparent concern is that [defendant] was temporarily denied access to his property.").

    Next, the length of the delay, was not unreasonable based on the circumstances.  The Government held Ms. Marquez's phone for 60-days before it sought a search warrant.  The retention and search of the cell phone was reasonable based upon the likelihood that it contained evidence of the importation of methamphetamine.  Ms. Marquez nonetheless argues that holding a cell phone for two months without seeking a warrant is unreasonable.  (Suppl. Mot., 3:17–5:16.)  The Government, however, is not required to pursue "the least

---

[2] Another factor, not relevant here, is whether the person is incarcerated or on parole.  *Sullivan*, 797 F.3d at 633 ("[w]here individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced.") (citing *Segura v. United States,* 468 U.S. 796, 813 (1984) (Burger, C.J.) (plurality opinion)).

intrusive course of action." *Hernandez,* 313 F.3d at 1213.  Ms. Marquez also ignores, as already discussed, that the Government had sufficient grounds to establish probable cause to seize and search Ms. Marquez's cell phone.  *See United States v. Johnson*, No. 14–cr–00412–THE, 2015 WL 4776096, at *6 (N.D. Cal. Aug. 13, 2015) (one-year delay between seizure of cell phone and obtaining a search warrant reasonable in light of "virtually nonexistent" possessory interest weighed against likelihood that the cell phone contained evidence.)

     Next, Ms. Marquez consented to the search of her cell phone.  "Where a person *consents* to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires *voluntary* tender of property." *Sullivan*, 797 F.3d at 633*; see United States v. Christie,* 717 F.3d 1156, 1163 (10th Cir. 2013) (when consent is freely given and the defendant declines to object the "government [is] entitled to assume under long-standing Supreme Court teachings that any Fourth Amendment interest in the computer's continued possession had been voluntarily relinquished.").  Here, as discussed, Ms. Marquez consented to the Government's search.  Ms. Marquez contends, however, that if she did consent, her consent was limited to the day of her arrest.  She asserts that "agent[] [Porter's] representation to Ms. Marquez was that her cell phone would be returned to her the same day." (Suppl. Mot., 3:13–14.)  Her argument is refuted by the record.  The consent form she read with Agent Porter and signed did not limit her consent.  (ECF No. 53-1.)  To the contrary, the consent form permits Ms. Marquez to withdraw her consent at any time, thus indicating that her consent was not so limited temporally.  (Marquez Tr., 28:1–15.)  Nor do Agent Porter's statements necessarily indicate that he was only asking for permission to search her phone that day.  He said, "if you give us the consent, then we can do it today." (*Id.* 29:5–7.)  The word "can" denotes a possibility, not a likelihood or a certainty.  *Can*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com (last visited November 25, 2020).  In

short, Ms. Marquez consented to the search of her phone and did not ask for its return.  At most, Ms. Marquez signed a form designating who the cell phone could be given to once returned.  (ECF No. 63-1.)

Finally, the Government also had an interest in extracting relevant data from the cell phone because probable cause existed to believe Ms. Marquez was importing methamphetamine and the phone contained evidence.  *Place*, 462 U.S. at 703–04;  *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) ("The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion. All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures.").  As Agent Mercado stated at the hearing, drug smugglers use cell phones to assist them and the Government has an interest in searching their cell phones to identify and locate co-conspirators, stash houses, and other delivery points.

Ms. Marquez nonetheless argues that her case is analogous to *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009).  In *Mitchell,* ICE agents went to the defendant's residence based on their suspicion that he was engaged in distributing and receiving child pornography.  *Id.* at 1349.  After refusing to allow the agents to search his desktop computer, the agents opened the computer's central processing unit and took the hard drive.  *Id.* The agents obtained a search warrant 21 days later.  *Id.* at 1350.  The Eleventh Circuit held that the delay was unreasonable because the defendant had a substantial possessory interest in the hard drive, which was likely to contain information "of exceptional value to its owner," and the "detention of the hard drive for over three weeks before a warrant was sought constitute[d] a significant interference with Mitchell's possessory interest."  *Id.* at 1351.  The case is distinguishable, however, because Ms. Marquez did consent to the search of her cell phone, thus reducing her possessory interest. *Sullivan*, 797 F.3d at 633 ("Where a person *consents* to

search and seizure, no possessory interest has been infringed because valid consent, by definition, requires *voluntary* tender of property.").

The Court does not suggest that agents may indefinitely take possession of cell phones before seeking a warrant, but the Court cannot say the delay here was unreasonable in light of the strong Government interest at stake and Ms. Marquez's failure to show her possessory interest was intruded upon. *See Place,* 462 U.S. at 704–06; *Johns*, 469 U.S. at 487; *Johnson*, 2015 WL 4776096, at *6. Accordingly, the Court finds the Government's delay was not unreasonable.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** the Defendant's motions to suppress.

**IT IS SO ORDERED.**

Dated: November 25, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge